**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0829-18T2

IN THE MATTER OF
GAMALIEL CRUZ,
CITY OF VINELAND
POLICE DEPARTMENT.

_____

Argued telephonically February 27, 2020 -
Decided April 9, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the New Jersey Civil Service Commission, Docket No. 2016-1020.

Louis Michael Barbone argued the cause for appellant Gamiliel Cruz (Jacobs & Barbone, PA, attorneys; Louis Michael Barbone, of counsel; Timothy C. Alexander, on the brief).

Michael E. Benson argued the cause for respondent City of Vineland Police Department (Buonadonna & Benson, PC, attorneys; Michael E. Benson, on the brief).

Gurbir S. Grewal, Attorney General, attorney for Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant Gamaliel Cruz appeals from the September 21, 2018 final agency decision of the Civil Service Commission (Commission) upholding his termination from the position of detective with the Vineland Police Department (VPD).  We affirm.

I.

The following facts are derived from the record.  Howard[1] is a confidential informant who provided information to Cruz with respect to numerous drug-related investigations for approximately six years.  During that time, the two "had almost daily phone contact[,]" as well as in-person meetings as needed.  Howard was formally registered with the VPD as an informant.

On August 3, 2010, Cruz and Howard exchanged ten calls, six from Howard to Cruz and four from Cruz to Howard.  The calls were of short duration.  Howard used a cellphone with a number unfamiliar to Cruz.

That evening, Howard learned gang members at his home were planning to commit a home invasion robbery at a specified Vineland residence.  He observed the gang members to be armed and in possession of drugs.

Cruz and Howard exchanged a series of short calls between 8:57 p.m. and 10:30 p.m.  During the exchange of calls, Howard informed Cruz of the

---

[1]  Howard is a pseudonym created below to protect the informant's identity.

A-0829-18T2

impending robbery. According to Cruz, although he suspected he was speaking to Howard, he did not know for certain the caller's identity. Cruz claims it was not until the following day during a follow-up telephone call that he realized Howard had provided the information about the robbery.

Shortly after the calls, Cruz informed his supervising sergeant of the information he received from Howard. The sergeant and another officer submitted affidavits certifying Cruz identified Howard by name as the informant and source of the information about the robbery. Based on the information received from Howard, Cruz issued a "be-on-the-lookout" notice for the car described by Howard as being driven by the gang members who intended to commit the robbery. Shortly afterwards, officers stopped the car. They arrested several suspects for drug offenses. The vehicle was towed to police headquarters to be searched after obtaining a warrant.

Cruz consulted an assistant prosecutor for permission to make a telephone application to a judge for a search warrant. He did not advise the assistant prosecutor he knew the identity of the informant or request advice concerning the nature of his prior contact with the informant. After making telephone contact with a Superior Court Judge, Cruz was put under oath. During his recitation of probable cause in support of the warrant, Cruz testified that he "got

a phone call from an anonymous subject . . . ." The judge asked "[a]lright . . . the subject you said was anonymous, you did not know this person?" Cruz responded "[c]orrect. Correct."

Cruz thereafter executed a confirmatory affidavit for approval by the search warrant judge and the assistant prosecutor. The affidavit referred to the informant as "a subject who wished to remain anonymous." Cruz also executed a search warrant approval form, with box No. 12 marked "NO" to the question of whether the investigation involved a confidential informant. Finally, Cruz prepared a police report stating that his source was a "subject who wished to remain anonymous." After the time Cruz claims he realized Howard was the source of the information, he did not correct the court record, amend his affidavit, or prepare a supplemental police report.

A few months later, an assistant prosecutor preparing a preindictment report realized Cruz may have provided false testimony when obtaining the search warrant. Cruz admitted to the assistant prosecutor he knew Howard's identity and withheld that information from the court to protect Howard. In response to a memorandum from the assistant prosecutor, the county prosecutor opened a criminal investigation of Cruz.

At the conclusion of the investigation, the county prosecutor wrote to chief of the VPD advising she was declining to prosecute Cruz for false swearing. She noted there was "more than sufficient evidence to support criminal charges[,]" but "obtaining a conviction at trial could have catastrophic [e]ffect[s] on the safety of other persons." The county prosecutor further stated "this Office shall be required from this date forward to disclose Detective Cruz's integrity issues to the defense in all future criminal prosecutions. So please consider this when taking administrative action."

VPD thereafter conducted an internal investigation. During an interview, Cruz acknowledged he knew the informant when he took the call, even though Howard did not explicitly state his name.

The VPD filed a preliminary notice of disciplinary action against Cruz seeking a ninety-day suspension. The county prosecutor's office subsequently notified the VPD that Cruz's false testimony caused the office to dismiss with prejudice eleven cases involving twenty defendants. In thirteen instances, first- or second-degree charges had been dismissed, mostly involving Cruz as the affiant on search warrant applications. In addition, the prosecutor's office stated that it "shall not proffer or present Detective Cruz as a witness with respect to

5

any future cases in which it would be necessary for our Office to call him as a witness."

After receiving this information, the VPD filed an amended preliminary notice of disciplinary action seeking removal of Cruz based on the following charges: incompetency, inefficiency, or failure to perform duties, N.J.A.C. 4A:2-2.3(a)(1); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); inability to perform duties, N.J.A.C. 4A:2-2.3(a)(3); and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(11). Cruz was also charged with failure to comply with VPD rules and regulations: abide by all rules, regulations and departmental procedures, 4:1.4; officers will conduct themselves with high ethical standards 4:1.7; performance of duty, 4:9.2; truthfulness under oath, 5:5.6; duty of employee to appear and testify, 5:5.1. After a departmental hearing, all charges were sustained, and VPD served a final notice of disciplinary action terminating Cruz.

Cruz appealed his termination to the Commission, which transmitted the matter to the Office of Administrative Law (OAL). An Administrative Law Judge (ALJ) held a five-day hearing.

The ALJ issued an initial decision finding VPD proved the charges against Cruz by a preponderance of the evidence. The ALJ's decision was based on his

A-0829-18T2

finding that Cruz's testimony he did not know Howard's identity at the time of the warrant hearing lacked credibility.

With respect to the incompetency, inefficiency, or failure to perform duties charge, N.J.A.C. 4A:2-2.3(a)(1), the ALJ found Cruz

> failed to perform several of his duties specifically involving how to respond to questions of a Superior Court Judge during a telephonic search warrant [application] and by not disclosing his "hunch" as to the identity of the anonymous calle[r] to [the assistant prosecutor]. He clearly demonstrated an absence of judgment in a sensitive position requiring public trust in the agency's judgment.

With respect to the charges of conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6), inability to perform duties, N.J.A.C. 4A:2-2.3(a)(3), and VPD rules and regulations, unethical conduct, 4:1.7, and duty to testify, 5:5.1, the ALJ found Cruz

> failed to perform duties required of him in his handling of the call to [the search warrant judge] for a telephonic search warrant. [Cruz] knew the identity of the caller and failed to advise the Judge of this fact when asked. Even though [Cruz's] intent was to protect the identity of his informant and was not done with ill intent, his untruthfulness creates issues whereby he cannot testify in any criminal court without a prosecutorial disclosure of his "Brady Issue,"[2] thereby, reducing his ability to serve as a police officer. This clearly constitutes

---

[2] See Brady v. Maryland, 373 U.S. 83 (1963).

behavior which could not only adversely affect the morale of the facility and [sic] undermine public respect in the services provided. The refusal of the Cumberland County Prosecutor's Office to call [Cruz] as a witness in any criminal trial serves to el[]iminate [Cruz's] ability to perform central functions of his job; namely making arrests and testifying in court.

Although the ALJ did not explicitly sustain the remaining charges under the VPD rules and regulations, he sustained the other sufficient cause charge, N.J.A.C. 4A:2-2.3(a)(11).[3]

Finally, the ALJ found bypassing progressive discipline and terminating Cruz's employment was justified because Cruz's conduct

was egregious such that progressive discipline need not be considered. The public who is served, and other employees, deserve to be able to expect that police officers are able to make arrests that will lead to convictions of those deserving such punishment. [Cruz's] inability to testify in a criminal court proceeding within Cumberland County eliminates his ef[f]ectivness to serve the public as a Police Officer within the [VPD].

---

[3] The ALJ's decision refers to both N.J.A.C. 4A:2-2.3(a)(11) and (a)(12) when addressing the other sufficient cause charge. When Cruz was charged, other sufficient cause was listed under (a)(11). See 27 N.J. Reg. 2884(a) (Aug. 7, 1995). A subsequent amendment listed other sufficient cause under (a)(12). See 44 N.J. Reg. 576(a) (Mar. 5, 2012). The ALJ's citation to the two regulations is immaterial to his analysis.

Cruz filed exceptions to the ALJ's decision with the Commission. On September 21, 2018, the Commission, after "having made an independent evaluation of the record," issued a final administrative determination adopting the ALJ's findings of fact and initial decision affirming Cruz's termination.

This appeal followed. Cruz makes the following arguments for our consideration:

POINT I

THE ALJ FAILED TO CONSIDER THE CREDIBLE TESTIMONY OF THE C.I. [HOWARD] RENDERING HIS DECISION ARBITRARY, CAPRICIOUS AND UNREASONABLE.

POINT II

THE A.L.J. FAILED TO CONSIDER THAT WHEN APPLYING FOR A SEARCH WARRANT, A POLICE OFFICER MAY NOT RELY ON A HUNCH AS THE BASIS OF HIS PROBABLE CAUSE.

POINT III

THE A.L.J.'S RULING WAS MANIFESTLY INCONSISTENT WITH THE LACK OF EVIDENCE THAT APPELLANT MADE A FALSE SWORN STATEMENT TO A SUPERIOR COURT JUDGE.

POINT IV

THE A.L.J.'S DECISION TO UPHOLD APPELLANT'S TERMINATION OF EMPLOYMENT

WAS EXCESSIVE AND NOT IN PROPORTION TO
THE OFFENSES CHARGED.

II.

Our role in reviewing the decision of an administrative agency is limited. Circus Liquors, Inc. v. Middletown Twp., 199 N.J. 1, 9 (2009). We will not disturb the determination of the Commission absent a showing "that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act." Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963).

Decisions of administrative agencies carry with them a presumption of reasonableness. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001). Moreover, "[a]ppellate courts must defer to an agency's expertise and superior knowledge of a particular field." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992). However, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

"There is no constitutional or statutory right to a government job." State-Operated Sch. Dist. v. Gaines, 309 N.J. Super. 327, 334 (App. Div. 1998). Civil Service employees' rights and duties are governed by the Civil Service Act, which provides that a public employee may be subject to major discipline for

various employment-related offenses. N.J.S.A. 11A:2-6; N.J.A.C. 4A:2-2.3. In an appeal from a disciplinary action or ruling by an appointing authority, the appointing authority bears the burden of proof to show, by a preponderance of the evidence, that the action taken was appropriate. N.J.S.A. 11A:2-21; N.J.A.C. 4A:2-1.4(a); In re Polk, 90 N.J. 550, 560 (1982).

Having carefully reviewed Cruz's arguments in light of the record and applicable legal principles, we conclude the Commission's final agency decision is sufficiently supported by the record and is not arbitrary, capricious, or unreasonable. We add the following comments.

There is ample support for the ALJ finding, after having the opportunity to make a credibility determination, that Cruz knew Howard's identity when he testified at the warrant hearing. Because of Cruz's long history of interacting by telephone with Howard, it is reasonable to conclude Howard would not have needed to explicitly state his name during the call for Cruz to identify him. Howard called Cruz's department-issued phone, which has a private number. There is evidence in the record Howard has a distinctive voice and his statement during the call asking Cruz to not "blow my cover," implies Howard thought Cruz knew his identity. In addition, Cruz's supervisor and a co-worker

11

submitted affidavits stating Cruz identified Howard by name as the informant shortly before the warrant hearing.

We also reject Cruz's argument the Commission erred by not imposing progressive discipline. Generally, the severity of a public employee's discipline should increase incrementally. In re Herrmann, 192 N.J. 19, 33 (2007). However, progressive discipline can be waived if "the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when [its] application . . . would be contrary to the public interest." Ibid.; see also In re Stallworth, 208 N.J. 182, 196-197 (2011); Div. of State Police v. Jiras, 305 N.J. Super. 476, 478-82 (App. Div. 1997) (finding bypass of progressive discipline appropriate after State Trooper assaulted a prisoner, rendering the Trooper unable to function as a law enforcement officer).

Although there is no evidence in the record of prior disciplinary action against Cruz, we cannot conclude the Commission's decision to terminate him was arbitrary, capricious, or unreasonable. Because of Cruz's false testimony, the county prosecutor dismissed pending charges against several defendants and determined her office would not call Cruz as a witness in future prosecutions. The county prosecutor's decision effectively prevents Cruz from performing an

essential duty of his office. In addition, false testimony by a police detective has the potential to severely undermine public confidence in law enforcement, warranting his removal from office.

To the extent we have not addressed Cruz's other arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION